Thank you again for the opportunity to discuss this case with you, the panel today. As you might imagine, there's a case here that was decided in the 5th Circuit. We'll call that the Ridgely case that both sides believe is dispositive of the issue here today. I'm sure that's not the first time that's happened. I want to highlight just a few things in Ridgely before I begin. Ridgely was a case in which plaintiffs had sued FEMA, claiming they had been denied a property interest in FEMA's refusal to continue to provide them with continuing rent payments. It was an appeal of a temporary injunction without an evidentiary record. And there's some things that the 5th Circuit noted in that case that I think are extremely important in our case today. First I want to point out that FEMA is not a part of this litigation. The first thing that the court noted was that these plaintiffs had been determined not to be eligible for their continuing rent payments. The court says that even if they were eligible, that's not the same as entitled. Correct. But what the 5th Circuit said, at least I think three times the opinion was, is that the statute and the regulations standing alone don't create a property interest. What I want to point out today is that we're not here standing alone. We're not here relying just upon the statutes and the implementing regulations. With Ridgely, the whole debate is, is it mandatory or discretionary? And there they said it was discretionary. And I don't think this has really been argued much by either side, but it seems to me here there's another problem. The statute in Ridgely gave individuals rental assistance. It made them eligible with FEMA's discretion, but it was a benefit to individuals. Here the statute is a benefit to state and municipalities, so I don't see how it gives a property interest to individual citizens, whether it's putting aside whether it's mandatory or discretionary. It says we'll give money to the state and locality, so how did Congress give any individual a property interest in that statute? That's why FEMA's not a party. In our case, there was a number of ... The sole point, the sole issue is to sponsor this case is, do my clients, the appellants, have a property interest in the funds that they were to receive through the state of Texas, through the city of Galveston? So you're not relying on the statute, you're really relying on the grant agreement. I'm relying on a written contract. But even ... It seems to me that argument runs into a difficulty in that neither the state nor the city requested the money. They did. Well, they didn't draw it down until your client provided proof of clear title, which required the waiver from the Homeowners Association. Right. Right. And it seems unclear that that was provided during the time allotted. It was provided, but as the city of Galveston says, we didn't do it in time. We didn't do it by this arbitrary August 31st, 2011 deadline. Saying we didn't do it in time and that we didn't do it all are two different things. Setting aside the question of the compliance with the deadline, because there's a lot on the record that shows that your clients were given notice of the deadlines and repeatedly failed to comply with those deadlines, but putting that aside, the timing issue, conditioning the performance under the agreement on getting this waiver from the Homeowners Association and not requesting the money, drawing down the money until that occurred, if those two are both established in the record, then what is the basis for saying that entitlement occurred just on the signing of the agreement? Well, because the entitlement, the agreement was the last step in a process. Well, the waiver was arguably a later step in the process. But the entitlement, the contracts, which under Texas law met the statute of frauds, any transaction. There was a condition precedent. So, it's a chicken and egg issue. Right. The contracts were signed before the condition became, before the waiver was required, but the waiver was obtained in the end. But the waiver, to the extent the waiver is an inextricable part of getting fee simple title, it was part of the contract, wasn't it? It was not included in the language of the contract. It was part of the regulation, wasn't it? No. Clear title was required. Clear title was required. Correct. And if we accept the argument that that was part of getting clear title, what happens to your argument? We got that release. So, we come back to what you say is a disputed issue. Right. But, where in the record, can you point me to exactly where in the record I will find evidence that the release was obtained, and when it was obtained, and when it was provided to the defendants? In our complaint. Okay, summary judgment on the city. Where in the record will I find that evidence? The findings, the opinion that the trial court entered in granting the 12B6 were incorporated into the opinion that the trial court granted when they granted the city's motion for summary judgment. I'm still asking where in the record I'm going to find that evidence. When we say we had met all requirements, including release, on or before August the 5th. That was your allegation. Correct. Where in the summary judgment record will I find evidence to support the allegation that there was that compliance, and when it occurred? Other than the letter from the city of Galveston that says you didn't do it by August 8th, it won't be. What do we do with that gap, in terms of summary judgment? I would argue that there is a fact issue, as a second point, regarding whether or not that occurred. The trial court found that it was undisputed that we had written agreements. That release is not contained within the four corners of that agreement, which is part of the record. We go back to, there was a decision made by the city of Galveston to participate in this FEMA program. I just want to go back to whether the waiver of HOA fees was obtained. If you did provide it, you say in your brief, and I think this comes from the complaint, that it was provided on August 5th, that would be a very simple thing to put something in the record, whether it's an affidavit or proof of a letter that was sent. I mean, I don't see why we're even, it's difficult to figure this out. Isn't there simple proof that would show that, if it did, in fact, happen? And the city is saying it didn't happen. The city's response, which is their August 8th letter, they just simply said you didn't do it all in time. Which is, which is, which is, which is different than saying . . . They extended it for your client, apparently. Well . . . Clients. They, they extended it because there was, there was an investigation ongoing by the state of Texas. So on, with 21 days left of the first deadline, they requested extension. The evidence seems to show, and this is part of Judge Costa's question, I think, that your control of the Homeowners Association, there was a lot of enmity, there was a lot of acrimony, and there is some basis to question whether the Homeowners Association would have given the waiver. And no evidence that they did give the waiver. So we're sort of stuck with this, where in the summary judgment record is there evidence that a waiver was provided, provided to the city, and when it was obtained, and absent that evidence, how do we reverse the summary judgment grant? The summary judgment was based upon a finding by the trial court that there was no property interest. And . . . But there's a circular . . . Because the conditions precedent weren't met. Exactly. Which is the waiver of the HOA dues. The first argument is that under the statutes and regulations, there's no property interest created. And my argument again is, well, standing alone, that may be true, but we have an agreement, a contract, that is one of the things that . . . Condition precedent. Correct. So we're back to the performance of the condition precedent and the evidence to support that. We would argue that we did, and the letter from the City of Galveston, August 8th, just said, sorry, you didn't do it in time, and there's not time left. It was 23 days. But the month before, when there was 21 days left, if there was this arbitrary deadline, well, they requested an extension of time. And we were caught in the middle between the state saying, well, we've got to hold off, we're conducting an investigation, which wasn't concluded until October 25th. So was the precondition the conclusion of the investigation, or was the precondition proof of the release? I mean . . . Fee symbol title, which required a waiver of the fees going forward, and HOA was required to do that. Your clients were required to get the waiver from the Homeowners Association. Apparently, nothing in the record says that they did, other than the allegation in your complaint. Which were, again, incorporated . . . or taken as true in the 12B6 motion and incorporated into the decision that the trial court issued in granting the summary judgment. That would be the evidence that would show that we had done it. I have a question about your claim you weren't given a fair opportunity for discovery. From what I can tell, there was about 11 months, an 11-month period of discovery. What happened during that 11-month period that prohibited you from obtaining whatever discovery might have helped obtain this evidence that it sounds like isn't there? Well, first thing, we agreed to stay discovery. There was an order interstating the deadline so we could present dispositive motions. And that was entered on February 23rd. Was there any effort to obtain discovery in eight of the dispositive motions on behalf of your clients? No. Was there any identification to the district court of specific discovery that you would have taken had you been given additional opportunity? Yes. What was that? I'm sorry, what was the question, Your Honor? Was there . . . did you make a request . . . No. Did you make a showing to the district court with specificity of what additional discovery you would have taken if given the opportunity to do so? No, Your Honor, we did not. Is that a problem? I believe so. It could be. We had so many . . . there were so many battles going on in this case, it's kind of hard to describe, but there was so much going on. My clients lived with the expectation for several years that their homes that had been damaged by the hurricane were going to get acquired, and when you don't take remedial actions to fix your homes, you kind of leave them there, the damage kind of grows exponentially. And so when you realize that, well, they're not going to get bought, now we're faced with trying to rebuild or restore, it just . . . it was a very, very . . . Are the homes still sitting there damaged? Yes. No, they . . . I believe all have been repaired to the extent that they could be occupied. No, they are there today. Why wasn't this case filed in Galveston Federal Court? Do you know why the case wasn't filed in Galveston Federal Court? No, I don't. I believe . . . It's not important. You wouldn't have me here today because I'd be recused, but it doesn't really matter. I was just curious. I don't know. There was no . . . there was no conscious decision . . . I wonder, too. I wonder, too. There was no conscious decision to file in either place. Probably that ever-popular factor of where the lawyers were. We argued on that we do have a property interest. Stating alone, the regulations and the statutes do not provide that. But in our case, after going through the entire process and qualifying under qualifications we had nothing to do with, under damage determinations we had nothing to do with, we received an agreement, the four corners of which we believe we complied with. Thank you. Thank you very much. You saved some time for rebuttal, Mr. Dixon. Ms. Cain, representing Nem Kidd and others. Yes, good afternoon, Your Honor, and may it please the Court. I'm Erica Cain from the Office of the Attorney General in Texas, here representing the four DPS officials that are named in their official capacity, who were dismissed from this case on a 12B6 motion. So the discussion, I understand, has been a lot about the summary judgment motion, but DPS was dismissed on a 12B6 based essentially on the issue of whether or not the statutes at issue that control the hazard mitigation grant programs actually do create a property, right? And from what I understand from what Appellant's counsel just said, is that they recognize that the statutes and rules standing alone do not do that. And for that reason, we would say that the Court below was correct in issuing the order on the motion to dismiss that essentially recognized that the plaintiffs, the appellants here, have failed to cite any statute, rule, or policy that created any interest that was protected that entitled them to due process protections and to support their due process claims. I will note that from the briefing in this Court, it appeared what the appellants were saying is that the notice of FEMA approval of eligibility somehow vested. Plus the sales agreements. Plus the sales agreements. That, of course, doesn't involve DPS is not a party. The State is not a party to those agreements. It is unclear, and the plaintiffs and the appellants have cited no authority that would indicate that that agreement then served to somehow impose a due process requirement on the State. Just to be clear here, the State is really the administrator of these funds. They're not the entity that actually is the instigator of the request for the funds or the one who actually works with the property owners. That is all the local entity. So DPS would have no role in that relationship. What I will note is, and I will also say that at the motion to dismiss stage when DPS was involved, this issue of the contract being the source of arrested right and this issue of conditions precedent was not really argued or pledged. It wasn't really discussed by the Court below. But I do want to note two things on behalf of my client. One, beyond what the contract says, I will note that the FEMA rules that govern these programs do impose an affirmative obligation on property owners. And if you look at 44 CFR 80.5D, it says that the property owners are required to comply with all requirements that are imposed as conditions of the grant. And then if you look at 44 CFR 80.17, it makes clear in the rules that clear title is a condition of receiving a buyout and effectuating a grant under this program. So if you look at those two provisions, even outside of the contract, just on the law, the fact that there is no evidence that those conditions were satisfied here would make clear that there has been no, essentially, satisfaction of the requirements that the property owners have imposed on them under the rules that would have vested any guarantee or entitlement here to buyout money. And so most of this focus is I'm going to let my colleague from Galveston discuss these issues because they are the ones that move to summary judgment. I will say this is a little procedurally odd in the sense that we have record evidence, uncontroverted record evidence that was produced at a summary judgment proceeding and we're here on a motion to dismiss. But I will say if the court does find that based on that summary judgment record that the plaintiffs failed to show a fact question as to whether or not a property interest vested, then it would simply be futile to send us back for them to replete so that we would go through the same summary judgment proceeding. And so we would just ask the court if it does reach that issue on the summary judgment point that because it would be futile to replete any kind of claim involving the contracts against EPS, they should affirm the dismissal of the claims against us. And unless the court has any questions, I will give the rest of my time to my colleague. Thank you. Mr. Abrams, representing the city of Galveston. Good afternoon. May it please the court, Barry Abrams here for the city of Galveston. I will attempt to be brief. I think the court put your finger on one of the central reasons why we shouldn't be here, and that is there's no evidence in the record that at any time the homeowners did comply with the clear condition precedent that they deliver clear title. Now, we spent a lot of time in the briefing and motion practice below fighting about the way that sort of first principles, the regulations require clear title free of liens. The city didn't create this problem. These homeowners bought a home in a subdivision that had deed restrictions that impose assessments and liens. So the liens preexist. The homeowners association that was unhappy about offering a release brought to the city's attention that this was an endemic problem, and so when the city did agree to purchase certain homes, it made it very clear it was going to have to be relieved of this financial obligation because the program was entered into in the wake of the hurricane, which had a big impact on the city. Did the homeowners association provide releases to everybody else except the plaintiffs? This homeowners association, to my knowledge, provided no one with a release. Every other homeowner in every other subdivision obtained a release. It was a nonissue for every other subdivision who had homeowners participating in the program. So this is a different homeowners association. The Sands of Kohala had a little intramural civil war among its few homeowners. Some of the homeowners didn't want their neighbor's properties bought out. They didn't want the houses raised. They didn't want vacant lots open to the public in their subdivision. So there was an intramural dispute, but the city was neutral. The city did all it could to be a neutral stakeholder here and say, if you, the homeowners, can comply, we will, as a city, close. One comment that I just don't want to go unresponded to, but I think from the record it's clear it's not correct. There's an insistence that this position is the contracts were signed before the city imposed this obligation. Well, in the record are copies of these flood damage sales contracts, and if you look at them, you'll see that the very first paragraph of the contract has an obligation that, in effect, the homeowner is tendering the contract to the city for acceptance. So they signed these contracts in September, but there's no action by the governing body of the city of Galveston to accept these contracts. The October 2009 minutes, which are in the record, which show that when the city council agreed to purchase some homes, it imposed this condition, predate the acceptance of the contract. Even if that were not so, and it is, the first paragraph of the damaged property contract requires that the property be sold free of liens. Whether we ever had a debate about waivers or not, unless those homeowners could go to the title company and demonstrate property that is free of the lien that the homeowners association had, there would be no closing. And these were the only homeowners in the only subdivision in the city of Galveston where this was a problem. Everybody else complied. The only testimonial summary judgment evidence in the record comes from then-City Attorney Susie Green, who explained the process. Everybody had the same standards. Everyone else complied except for the combatants in this little subdivision. The issue, when there is an allegation that says, we did comply by such and such date, not within the 30-day deadline. It is news to me. And I echo what Judge Costa said, which is, how hard would it have been? I was looking for it. I'd seen it in their pleadings. I've never seen it today. I'm not saying it didn't happen. I'm telling you, I've never seen it. Your clients never got it. To my knowledge, we never got evidence that they had clear title, free of lien. All they had to do was go to the title company and demonstrate it, and we'd be off to the races and we wouldn't be here. This might just be a meaningless semantic distinction, but is your position that the contract didn't create a property interest or just that there was no deprivation of the property interest because you complied with the contract and they didn't? I mean, which box would you fit that into? Under Texas law, for there to be a vested property interest, and my understanding of federal law generally is we look to state law when there's not a statutory entitlement to see if there's a vested right. Under Texas law, when there are discretionary actions that are conditions, there's not a vested property right. In this instance, at the grant level, we've already dealt with the discretion issue. At the contract level, the obligation in the contract that they deliver title free of lien meant that the discretion about whether or not this property could be conveyed rested with a third party. It rested with the other homeowners and the homeowners association. So the city's position is under Texas law, and the state court judge candidly when he dismissed the two state court cases, one on jurisdictional grounds, concluded that there's no vested right because that property right can't be implemented without the conduct of a third party, and the discretion of the homeowners association precluded them from having a vested right. So, Judge, our position is that that contract doesn't give rise to a vested right. It also wasn't performed. Is your argument that it couldn't give rise or that until compliance was demonstrated it didn't give rise? It is hypothetical, but my position probably would have been if they had showed performance, then the right would have matured because then there would no longer be any discretion at issue that would foreclose the ability of the homeowner to tender the contract for closing. So this whole notion of clear title runs throughout the regs, the contract, the city council authorization. It's rampant, and it was never complied with. I mean, that's in it in a nutshell, and as the court has concluded, has heard, there was no attempt on the part of the homeowners to persuade Judge Harmon that there was specific evidence that if they only had the opportunity to do discreet discovery, they could come back and provide that evidence to the court that would have changed the result. They made no attempt, and as we mentioned in our briefing, even had they made a motion, which they didn't, the standard would be abuse of discretion, and here certainly Judge Harmon did not abuse her discretion on this record. I'd be happy to respond to questions, but I think the issues have been narrowed, and I appreciate your courtesy. Thank you very much. We have a little time for rebuttal here. Mr. Dixon? Just two points. In this Homeowners Association, the appellants were the only individuals who were selling their homes. So, no, there was no other release requested of the other homeowner. The second point I want to make is that the deed restrictions that the waiver related to were part of the declarations that were covenants with the land. And two points. Number one, they're not a lien. Homes are sold frequently in deed-restricted communities, and there's no release necessary from the Homeowners Association. So they're not a lien, I would argue, as a matter of law. But the contract didn't deal with a release of any covenants. That obligation was not within the four corners of our agreement. Thank you. Okay. Thank you very much. That concludes the arguments for today on the oral argument calendar.